UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GUNTHER ALZUBI, A75-797-344,

                        Petitioner,

            -v-                                                    14-CV-705-JTC

TODD TRYON, AFOD for Buffalo Federal
Detention Facility,

                        Respondents.

_____

## INTRODUCTION

Petitioner Gunther Alzubi (a/k/a Al Zubi Gonther, a/k/a Zobi Monther), an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS") at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, pending the execution of a final immigration order of removal issued against him.  Item 1.  As directed by this court's order entered September 8, 2014 (Item 2), respondent has submitted an answer and return (Item 4), along with an accompanying memorandum of law (Item 5), in opposition to the petition, and petitioner has submitted a reply (Item 8).

For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Jordan, entered the United States at an unknown location on an unknown date in 1990 without being inspected, admitted or paroled by an immigration officer.  *See* Item 4-1 (Payan Decl.), ¶ 5; Item 4-2 (Exh. A), p. 19.  DHS records reflect that, between January 1995 and May 2009, petitioner was convicted of several criminal offenses while present in the United States, including the following:

• On or about January 26, 1995, petitioner was convicted of Grand Larceny in the 4th Degree;

• On or about January 31, 1996, petitioner was convicted of Intent to Obtain Transportation Without Paying.

• On April 30, 1998, petitioner was convicted of Aggravated Unlicensed Operation of a Motor Vehicle in the 1st Degree and Tampering with Public Records in the 1st Degree.

• On or about June 5, 2003, Petitioner was convicted of Possession of a Forged Instrument in the 3rd Degree.

• On or about July 22, 2003, Petitioner was convicted of Petit Larceny.

• On or about February 23, 2004, Petitioner was convicted of Patronizing a Prostitute in the 4th Degree.

• On or about January 4, 2005, Petitioner was convicted of Illegal Reentry to the United States after deportation subsequent to a felony conviction.

• On or about June 13, 2008, Petitioner was convicted of Insurance Fraud in the 3rd Degree.

- On or about May 12, 2009, Petitioner was convicted of Reentry of Deported Alien and False Statement in Application/Use of Passport.

*See* Item 4-1, ¶ 6; Item 4-2, pp. 28-29.

On June 2, 1998, while in the custody of the New York State Department of Correctional Services ("DOCS") serving a term of incarceration at the Ulster Correctional Facility in Napanoch, New York, petitioner was encountered by immigration officers and an immigration detainer was lodged against him upon verification of his immigration status. *See* Item 4-1, ¶ 7.  Deportation proceedings were commenced by a Notice to Appear ("NTA") dated January 6, 1999, which charged petitioner with being subject to removal from the United States pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled.  *Id.* at ¶ 8.

On April 14, 1999, an immigration judge ("IJ") found petitioner removable from the United States, and ordered him deported to Columbia, or in the alternative to Jordan.  *Id.* at ¶ 9.  Petitioner waived his right to appeal the IJ's decision to the Board of Immigration Appeals ("BIA"), and on May 27, 1999, petitioner was removed to Columbia.  *Id.* at ¶¶ 9-10.

DHS records further reflect that petitioner has since re-entered the United States following his removal on several subsequent occasions, as follows:

- On May 30, 2001, following re-entry at an unknown place and time, petitioner was served with a Notice of Intent/Decision to Reinstate Prior Order (Form I-871).  On August 28, 2001, he was removed to Jordan after Columbia refused to accept him.

- On June 7, 2002, following re-entry, petitioner was served a Form I-871.  On August 23, 2002, he  was again removed to Jordan.

- On July 24, 2003, following re-entry, petitioner was served a Form I-871.  On December 3, 2003, he was again removed to Jordan.

- On May 23, 2006, following re-entry, petitioner was served a Form I-871.  On June 16, 2006, he was again removed to Jordan.

- On July 12, 2010, following re-entry and arrest on an unknown charge, petitioner was encountered by immigration officers at Westchester County Jail and was served a Form I-871.

*Id.* at ¶¶ 13-14.

On January 30, 2012, upon his release from custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), petitioner was received into DHS custody.  *Id.* at ¶ 15.  On January 31, 2012, petitioner was served with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that were required to be completed within 30 days to assist in obtaining a travel document for his removal from the United States.  The warning form advised, among other things, of criminal penalties under the INA for conniving or conspiring to prevent or hamper his departure from the United States, and also advised that, pursuant to INA § 241(a)(1)(C), failure to comply or to provide sufficient evidence of inability to comply may result in the extension of the removal period and subject him to further detention.  *Id.* at ¶ 16.

DHS records further show that, on February 2, 2012, DHS sent a presentation packet to the Embassy of Jordan (the "Embassy") in Washington, D.C., requesting that a

travel document be issued for petitioner's removal.  Item 4-2, p. 64.  On March 20, 2012, the DHS received the travel document from the Embassy.  *Id.* at 66.  Petitioner refused to comply with the order of removal, and requested relief from removal under INA § 241(b)(3).  Item 4-1, ¶ 19.

On April 27, 2012, petitioner was served with a letter informing him that, upon review of his custody status, DHS had determined to continue his detention pending removal because he "pose[d] a danger to the community and … a significant risk of flight."  Item 4-2, pp. 28-30.  This determination was based on several considerations, including his extensive criminal record; his history of failure to appear for criminal proceedings; his history of poor conduct while in the custody of the DOCCS and DHS; and his refusal to be removed as ordered, all demonstrating "a wanton disregard for the laws of the United States."  *Id.* at 30.

On August 2, 2012, a panel was convened at the Buffalo Federal Detention Facility to conduct further review of petitioner's custody status, including an in-person interview.  *Id.* at 22.  Following completion of the file review and interview, petitioner was notified on August 3, 2012, that DHS had determined to continue his detention in DHS custody.  *Id.* at 25-26.  On August 8, 2012, petitioner withdrew his request for relief from removal and deferral of removal.  *Id.* at 55.

On August 14, 2012, DHS sent a letter to the Embassy requesting that a new travel document be issued for petitioner, supplemented by letter dated September 10, 2012, enclosing new photographs of petitioner.  *Id.* at 62-63.  Petitioner was interviewed by

telephone by an Embassy representative on September 11 and September 25, 2012.  Item 4-1, ¶ 26.

Meanwhile, on September 8, 2012, petitioner filed a prior petition in this court (Civ. No. 12–CV–875–JTC) seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-removal-order custody was unlawful since it had exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  By decision and order dated April 12, 2013, this court denied the petition, finding that the continuation of petitioner's detention at the BFDF was attributable in large part to his own conduct in refusing to consent to his return to Jordan, and petitioner had therefore failed to demonstrate that he was in custody in violation of the Constitution, laws, or treaties of the United States for the purposes of granting habeas corpus relief under § 2241.  *Gonther v. Napolitano*, 2013 WL 1569311, at *6-*7 (W.D.N.Y. Apr. 12, 2013).

As reflected in DHS records, events transpiring subsequent to the circumstances of detention considered on the prior petition indicate that on October 31, 2012, the Embassy issued a new travel document for petitioner, valid for one month, and DHS made arrangements for petitioner to be removed to Jordan on November 27, 2012.  *Id.* at ¶ 28; Item 4-2, pp. 2, 65.  On November 1, 2012, upon further review of petitioner's custody status, DHS notified petitioner that it had decided to continue his detention since removal to Jordan was expected to occur in the reasonably foreseeable future.  Item 4-2, p. 23.  On November 8, 2012, during a telephone call with the Embassy, petitioner stated that he would continue to refuse to comply with removal.  *Id.* at 2.

On November 13, 2012, petitioner was served with a formal Warning for Failure to Depart (Form I-229(a)), *id.* at 47, and at the time of service informed the deportation officer assigned to his case that he would not comply with removal.  *Id.*; Item 4-1, ¶ 30.  DHS therefore cancelled the travel arrangements for petitioner's removal to Jordan scheduled for November 27, 2012, and served him with another Form I-229(a) warning notice.  *Id.* at ¶ 31.

On November 29, 2012, DHS served petitioner with a Notice of Failure to Comply Pursuant to 8 C.F.R. 241.4(g), advising him that his removal period was being extended due to his failure to comply with the removal process, and that his detention in DHS custody would continue until he could demonstrate that he was "making reasonable efforts to comply with the order of removal …."  Item 4-2, pp. 17-18.  DHS served petitioner with additional Form I-229(a) warnings and instructions on December 21, 2012; January 16, 2013; February 13, 2013; March 13, 2013; April 9, 2013; May 6, 2013; June 4, 2013; July 2, 2013; and August 1, 2013, and on each of these dates, petitioner stated to the DHS officer serving the documents that he would not comply with removal.  Item 4-1, ¶ 34.

On January 9, 2013, petitioner filed with the Immigration Court a motion seeking to reopen that court's August 8, 2012 order granting petitioner's request to withdraw his applications for relief from removal, and on February 5, 2013, the IJ denied the motion to reopen.  Item 4-2, p. 54.  Petitioner appealed to the Board of Immigration Appeals ("BIA"). On July 31, 2013, the BIA remanded petitioner's motion to reopen to the Immigration Court for additional fact finding, and DHS removed petitioner from "failure to comply" status.  Item 4-1, ¶ 38.  On remand, the IJ once again denied petitioner's request for relief from removal

(Item 4-2, p. 52), petitioner appealed (*id*. at 51), and on March 28, 2014, the BIA dismissed petitioner's appeal. *Id.* at 50; Item 4-1, ¶¶ 40, 42.

Meanwhile, DHS conducted further review of petitioner's custody status in October 2013, January 2014, and April 2014, and determined to continue his detention. Item 4-1, ¶¶ 39, 41, 44.

On April 2, 2014, DHS served petitioner another Form I-229(a), again advising him of his obligation to assist in his removal and comply with the process. Item 4-2, p. 36. On April 9, 2014, petitioner notified DHS that he would comply with his removal to Jordan (*id.* at 3), and DHS sent a request to the Embassy to reissue a travel document for petitioner. *Id.* at 61. During an interview with a representative of the Embassy conducted by telephone on April 15, 2014, petitioner did not indicate whether or not he would comply with removal. *Id.* at 3. Then, on June 24, 2014, petitioner stated to a representative of DHS that he would not comply with removal, and he refused to participate in another telephonic interview with the Embassy scheduled for June 26, 2014. He later contacted the Embassy and stated that he would not depart to Jordan. *Id.* at 4; Item 4-1. ¶¶ 46, 47. Consequently, on July 7, 2014, DHS served petitioner with a Notice of Failure to Comply pursuant to 8 C.F.R. 241.4(g), returning him to "failure to comply" status. Item 4-2, pp. 5-7. This status was continued by further notice dated September 29, 2014. *Id.* at 2-4. DHS also served petitioner with additional Form I-229(a) warnings and instructions on each of the following dates: July 10, 2014, August 7, 2014, September 3, 2014, and October 3, 2014. *Id.* at 32-35; Item 4-1, ¶ 49.

Meanwhile, petitioner filed the present action on August 26, 2014, once again seeking habeas corpus relief on the ground that his continued detention is unlawful under *Zadvydas*. Upon full consideration of the claims in the petition and the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

As discussed at length in this court's April 12, 2013 decision and order denying petitioner's prior application for habeas corpus relief, matters pertaining to the detention of aliens pending the completion of immigration removal proceedings, and pending removal following the entry of a final order of removal, are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case, petitioner's detention at the time he filed the present habeas petition was authorized pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered removed due to conviction of a crime (like petitioner here)–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …."  INA § 241(a)(6).[1]

In addition, INA § 241(a)(1)(C) provides for suspension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal …." 8 U.S.C. § 1231(a)(1)(C); *see also* 8 C.F.R. § 241.4(g)(1)(ii).  The regulations further explain that:

> Release will be denied and the alien may remain in detention if the alien fails or refuses to make timely application in good faith for travel documents

---

[1]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

necessary to the alien's departure or conspires or acts to prevent the alien's removal.  The detention provisions of section 241(a)(2) of the Act will continue to apply, including provisions that mandate detention of certain criminal and terrorist aliens.

8 C.F.R. § 241.4 (g)(5)(i).

In this case, the evidence before the court reveals a consistent pattern of deliberate conduct on the part of petitioner aimed at frustrating the removal process, triggering suspension of the removal period pursuant to INA § 241(a)(1)(C).  As recognized by several courts that have considered the issue, detention under this provision does not raise the same constitutional due process concerns as those addressed in *Zadvydas*.  *See Pelich v. Immigration and Naturalization Service*, 329 F.3d 1057, 1059–60 (9th Cir. 2003) ("The risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when the alien is the cause of his own detention."); *Agbanyo v. Cabral*, 518 F. Supp. 2d 326, 327 (D. Mass. 2007) (six-month rule of *Zadvydas* does not apply if alien refuses to cooperate fully and honestly with officials to secure travel documents), *cited in Ricketts v. Mule*, 2009 WL 102953, *6 (W.D.N.Y. Jan. 13, 2009); *see also Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 501 (S.D.N.Y. 2009) (citing cases upholding continued detention under § 241(a)(1)(C) where alien subject to removal order committed some affirmative and misleading act to thwart removal process, or expressly refused to cooperate).

As discussed above, the record reflects that petitioner has repeatedly refused to cooperate with DHS in effectuating his removal to Jordan upon issuance of travel documents by the Embassy, and upon service of several Form I-229(a) warnings and Notices of Failure to Comply; he has re-entered the United States on no less than five

occasions following completed removal proceedings, using several different aliases (*see* Item 4-2, pp. 50, 57, 58); and he has been convicted of illegal re-entry at least twice.  In light of this uncontroverted evidence, petitioner's continued detention in DHS custody is authorized by INA § 241(a)(1)(C) (8 U.S.C. § 1231(a)(1)(C)), and the petition must be dismissed.

Even if the removal period had not been extended in this case, petitioner's claim under *Zadvydas* would fail.  In the *Zadvydas* case, the Supreme Court was presented with the challenge of reconciling the apparent authorization of indefinite detention under INA § 241(a) with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …."  *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal.  Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien."  8 C.F.R. § 241.13(d)(1).  The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents."  8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.  Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future,

and that there are no special circumstances justifying continued detention, then it must order the detainee released.  8 C.F.R. § 241.13(g)(1).  However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination.  *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, and as discussed at further length in the court's decision and order denying the prior petition, in this case petitioner was received into DHS custody on January 30, 2012, upon his release from state custody.  *See* Item 4-1, ¶ 15.  As a criminal alien under a final order of removal based on his presence in the United States without being admitted or paroled, detention was mandatory for the ninety-day removal period pursuant to INA § 241(a)(2).  Furthermore, upon determining that petitioner posed a significant threat to the safety and security of the community and a risk of flight, DHS was authorized under INA § 241(a)(6) to continue the detention beyond the expiration of the ninety-day period for "a period reasonably necessary to secure removal."  *Zadvydas*, 533 U.S. at 699-700.  And, as a consequence of his deliberate failure to comply with the removal process, the removal period has been suspended pursuant to INA § 241(a)(1)(C) until such time that he can demonstrate that he has made reasonable efforts to comply with the order of removal.

Under *Zadvydas*, the first six months of detention following a final removal order are "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Only if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future. *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Upon review of the submissions on the present petition, the court finds that petitioner has once again failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Jordan in the reasonably foreseeable future. Instead, petitioner alleges that the Embassy of Jordan sent him a letter indicating that "the Jordan government will no longer issue a travel document[ ] … due to his mental and Physical illness." Item 8, p. 5.[2] However, DHS Deportation Officer Earl G. DeLong, the officer assigned to petitioner's removal case, has submitted a declaration stating that petitioner has not provided DHS with a copy of the letter, and no such letter has otherwise been received by DHS or made part of the record before the court. Item 10, ¶ 5. Officer DeLong further states that, contrary to petitioner's allegations, Jordanian Embassy officials have

---

[2]Petitioner states that he has attached a copy of the letter from the Embassy as Exhibit A-2 to his reply declaration (Item 8), but there is no letter attached.

confirmed with representatives of DHS Headquarters Travel Document Unit ("HQTDU") that a travel document will be issued upon finalization of alternative travel arrangements, which is expected to occur in the reasonably foreseeable future.  *Id.* at ¶ 6.

Moreover, as discussed above (and in this court's decision and order dismissing the prior petition), the Embassy has recently issued travel documents for petitioner on at least two separate occasions in 2012, and DHS has amply demonstrated prompt action to initiate and effectuate the removal proceedings.  As fully reflected by the record, any delay in the removal process has been occasioned in substantial part, if not entirely, by petitioner's own conduct in refusing to consent to his return to Jordan or to otherwise cooperate in the removal process.

These circumstances provide a reasonable basis for the DHS to expect that an updated travel document will issue, and removal will be accomplished, in the reasonably foreseeable future upon obtaining petitioner's consent.  Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish his compliance with the requirements of the DHS regulations described above.  Rather, petitioner relies on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*.  *See* Item 1, ¶¶ 18-20, 27-34.  However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*.  *See, e.g., Khaleque v. Dep't of Homeland Sec.*, 2009 WL 81318, at *4 (W.D.N.Y. Jan. 9, 2009) (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded

positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has again failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future …." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: February 25, 2015
p:\pending\2014\14-705.2241.feb23.2015